**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JOSHUA BLANCHFIELD, ET AL.,          :
          Plaintiffs,          :          CIVIL ACTION NO.
                         :          15-CV-431 (JCH)
     v.          :
                         :
CITY OF HARTFORD,          :          APRIL 11, 2016
          Defendant.          :

### RULING RE:  DEFENDANT'S MOTION TO DISMISS (DOC. NO. 42)

## I.      INTRODUCTION

Joshua Blanchfield, Simon DeSantis, Kevin Lambkins, Julia Rosenblatt, David and Laura Rozza, Hannah Simms, and Maureen Welch (collectively, the "plaintiffs") bring this action against the City of Hartford (the "City") under section 1983 of title 42 of the United States Code.  Amended Complaint (Doc. No. 34) at 20-21.[1]  The plaintiffs allege that the City's Zoning Regulations, which restrict the use of the property in which they jointly live at 68 Scarborough Street (the "property") to single family use, violate their rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.  Id.  The plaintiffs seek a permanent injunction against the enforcement of section 731 against them, as well as compensatory and punitive damages.  Id. at 24.

The court granted the City's first Motion to Dismiss in a written Ruling on October 14, 2015, on the ground that the court lacked subject matter jurisdiction over the dispute.  Ruling (Doc. No. 32).  In its Ruling, the court dismissed the first Complaint

---

[1] Due to its duplicative paragraph numbers, the court will refer to page numbers when citing to the plaintiff's Amended Complaint.

without prejudice to file an amended complaint within 21 days.  Id. at 13.  The plaintiffs timely filed an Amended Complaint.  Amended Complaint (Doc. No. 34).

The City has again moved to dismiss on the grounds that the court lacks subject matter jurisdiction over this dispute, should abstain from exercising whatever jurisdiction it may have, or on the ground that the Amended Complaint fails to state a claim upon which relief can be granted.  Def.'s Mot. to Dismiss (the "City's Motion") (Doc. No. 42).  The plaintiffs have opposed the Motion.  Pls.' Opposition ("Opposition") (Doc. No.48).

For the reasons set forth below, the City's Motion is **GRANTED**.

## II.    BACKGROUND

The court assumes the parties' familiarity with its previous Ruling (Doc. No. 32), but will briefly recount the facts alleged that are most relevant to the decision here.

The plaintiffs are eight adults who, since August 2014, have lived with three children on a property that the City has zoned for single family use.  Amended Complaint 1-12.  On October 20, 2014, the City sent a letter to Laura Rozza and Simon DeSantis, who are listed on the City's register as the property's owners, advising them that the City's Division of Licenses and Inspections ("DLI") "had reason to believe that more than one family was residing at [the property]."  Id. at 12.  The letter asked the plaintiffs to "contact the Director of Licenses and Inspections at their earliest convenience."  Id.

One week later, DLI received a portion of an e-mail chain, originally sent by the plaintiffs to neighboring property owners, describing themselves as "two families and two couples without children."  Id. at 13.  Allegedly regarding this e-mail as the

equivalent of an "inspection" of the property, DLI issued a Notice to Cease and Desist (the "Notice") to the plaintiffs on October 29, 2014.  Id.

The plaintiffs appealed the Notice to the Zoning Board Appeals ("ZBA").  Id. 15. In denying the plaintiffs' appeal, four members of the ZBA are alleged to have expressed opinions on the record.  One member said, "I'm sorry that the regs are like they are;" another stated, "Maybe there will be a way through planning and zoning;" a third said, "we need the change[ in the Zoning Regulations, but t]his is not the place to do it in this mechanism[ ] . . . we can't be the ones to do it;" and a fourth said, "I'm sorry for the people who invested a lot of money under false pretenses.  I hope they can sell the house and make a profit and buy a house in another zone and follow the rules."  Id. at 16-17.

On March 24, 2015, the City filed a civil enforcement action in Connecticut Superior Court.  Id. at 19.  The City's enforcement action seeks the following:

1.      A temporary and permanent injunction ordering the Plaintiffs to cease using the property at 68 Scarborough Street, Hartford, Connecticut, in violation of the single family residence requirements of the Hartford Zoning Regulations;

2.      Civil penalties;

3.      Costs, fees and attorneys' fees pursuant to C[onnecticut General Statutes] § 8-12;

4.      Such other relief as the court deems just and equitable.

Id.  The provision of the Connecticut General Statutes that authorizes the City to prosecute such an enforcement action permits such an action to be brought civilly or

criminally.  Conn. Gen. Stat. § 8-12 (authorizing civil and criminal actions for violations of zoning ordinances).

The plaintiffs initiated the instant case on March 25, 2015.  Complaint (Doc. No. 1).  The gravamen of both their first Complaint and their Amended Complaint is that the Zoning Regulations' definition of "family" violates the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.  See, e.g., Amended Complaint at 20-21.

On October 14, 2015, the court granted the defendant's Motion to Dismiss, holding that the matter was not ripe for adjudication.  Ruling (Doc. No. 32).  Specifically, the court ruled that the plaintiffs had not obtained a "final decision" from the ZBA concerning how they may use their property, as required by Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 192-94 (1985); see also Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005).  The decision of the ZBA denying the plaintiffs appeal was not final because the plaintiffs did not seek (and as yet have not sought) a variance for undue hardship, as generally is required by Williamson County and its progeny; further, the evidence before the court at the time of its first Ruling did not show that the ZBA "lack[ed] discretion to grant variances or ha[d] dug in its heels and make clear that all such applications w[ould] be denied," such that a variance application would be "futile."  Murphy, 402 F.3d at 349; see also Ruling at 12-13.

In its Ruling, the court, without briefing from the parties, "recognize[d] the potential propriety of abstention in light of Younger v. Harris, 410 U.S. 37 (1971)."  Id. at

9 n.1.  However, because a ground for decision existed on a fully briefed issue, the court declined to rest its decision on Younger.

The City has again moved to dismiss on the following grounds: first, that the plaintiffs have not yet established that their claim is ripe because the newly alleged comments by the ZBA commissioners do not show that the ZBA has "dug in its heels" thereby rendering an application for a variance "futile;" second, that, assuming the court had jurisdiction, it should nonetheless abstain from exercising its jurisdiction because of the pending enforcement action in Connecticut state court; and third, that the Amended Complaint fails to state a claim upon which relief can be granted.  Motion at 7-16; 17-24.

## III.    DISCUSSION

Article III of the United States Constitution provides, in pertinent part, that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution."  U.S. Const. art. III, § 2.  As a general matter, "jurisdiction existing, [the Supreme Court] has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'"  Sprint Communications, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

However, exceptions exist to the generally applicable requirement that a federal court exercise jurisdiction once it has been established.  One such exception was articulated in Younger v. Harris, in which the Supreme Court instructed the lower courts generally to refrain from exercising federal jurisdiction to enjoin or otherwise to interfere with ongoing state criminal proceedings.  Younger v. Harris, 401 U.S. 37, 43-45 (1971).  Such abstention is derived from interrelated principals of comity and federalism, and

"rests foursquare on the notion that, in the ordinary course, a state proceeding provides an adequate forum for the vindication of federal constitutional rights. . . . Therefore, giving the respect to our co-equal sovereigns that principles of 'Our Federalism' demand, [ ] federal courts [are generally prohibited] from intervening in such matters." Diamond "D" Construction Corp. v. McGowan, 282 F.3d 191, 197 (2d Cir. 2002) (internal quotation marks and citations omitted).  If Younger abstention applies, it "is mandatory and its application deprives the federal court of jurisdiction in the matter."  Id. at 197; cf. Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir. 2003) ("While dismissal or a stay of claims is mandatory when the requirements for Younger abstention are satisfied, Younger is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." (internal citation omitted)).

Over the years, Younger was extended to mandate abstention as to other types of state proceedings other than criminal prosecutions.  See, e.g., Trainor v. Hernandez, 431 U.S. 434, 444 (1977) ("[T]he principles of Younger . . . are broad enough to apply to interference by a federal court with an ongoing civil enforcement action . . . brought by the State in its sovereign capacity.").  In its recent decision in Sprint Communications, the Court clarified the Younger doctrine's scope by recognizing three categories of state proceedings as to which the lower courts must abstain under Younger: (1) "state criminal prosecutions;" (2) "civil enforcement proceedings;" and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." Sprint Communications, 134 S. Ct. at 588; see also Falco v. Justices of the Matrimonial

6

Parts of the Supreme Court of Suffolk County, 805 F.3d 425, 427 (2d Cir. 2015)

(applying Sprint Communications' categorical approach).

Should a parallel state proceeding fall within one of these three categories, the

Supreme Court has instructed that a district court should consider three "additional

factors" set forth in Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457

U.S. 423, 432  (1982), "before invoking Younger."  Sprint Communications, 134 S. Ct. at

593.  These factors are: that "(1) there is an ongoing state proceeding," (2) that

implicates an important state interest, and (3) the state proceeding affords the federal

plaintiff an adequate opportunity for judicial review of his or her federal constitutional

claims."  Spargo, 351 F.3d at 75; see also Middlesex County, 457 U.S. at 432.

Though it is generally necessary for a federal court to determine whether it has

subject matter jurisdiction to hear a case before ruling on its merits, see generally Steel

Co. v. Citizens for Better Environment, 523 U.S. 83 (1998), "it does not violate

separation of powers principles to dismiss an action on a non-merits ground before

finding subject matter jurisdiction."  Spargo, 351 F.3d at 74; see also Ruhrgas AG v.

Marathon Oil Co., 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to

choose among threshold grounds for denying audience to a case on the merits.  Thus,

as the Court observed in Steel Co., district courts do not overstep Article III limits when

they . . . abstain under Younger . . . without deciding whether the parties present a case

or controversy." (citing Steel Co., 523 U.S. 100-01, n.8, and Ellis v. Dryson, 421 U.S.

426, 433-34 (1975))); McGRX, Inc. v. Vermont, 452 Fed. App'x 74, 75 (2d Cir. 2012)

(summary order) ("Younger clearly applies here and mandates federal court abstention.

7

Thus, we need not reach the other issues . . . regarding standing . . . .") (citing <u>Spargo</u>, 351 F.3d at 74).

This case involves a pending state matter as to which this court must abstain under <u>Younger</u> from exercising any jurisdiction it may have.[2]

As an initial matter, it is incontestable that the pending state proceeding in this matter falls into the second of <u>Sprint Communications</u>' three categories of cases mandating <u>Younger</u> abstention: it is a "civil enforcement proceeding." <u>Sprint Communications</u>, 134 S. Ct. at 588.  As the Supreme Court explained:

> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, <u>i.e.</u>, the party challenging the state action, for some wrongful act.  In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action.  Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

<u>Sprint Communications</u>, 134 S. Ct. at 592 (internal citations omitted).  Following an investigative process, the City formally commenced a civil enforcement action in state court to sanction the plaintiffs for their conduct and to seek a permanent injunction. Amended Complaint at 18-19.  By the plaintiffs' own admission in their Amended Complaint and Opposition, the pending state proceeding involves all of the touchstone

---

[2] This Ruling should not be interpreted as a finding that the court has subject matter jurisdiction over this case.  The plaintiffs' Amended Complaint sets forth more facts than were set forth in the first Complaint concerning whether the ZBA would be amenable to granting the plaintiffs relief, but the court is not necessarily persuaded that the facts alleged are sufficient to show that the ZBA lacks authority or has "dug in its heels" <u>as to a variance</u>, which, as was discussed at length in the court's prior Ruling, is required under <u>Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City</u>, 473 U.S. 172, 192-94 (1985).  Finally, the court notes that plaintiffs' argument that the prior Ruling of the court "finds jurisdiction, and is the law of the case," Opposition at 18, is plainly without merit.  The court's prior Ruling, in dismissing the case for want of jurisdiction, held the opposite.  The court dismissed the case without prejudice to replead, and the plaintiffs' docketing of an Amended Complaint hardly constitutes a determination by the court that the Amended Complaint is jurisdictionally sufficient under Article III. Rather, the docketing of the Amended Complaint, and reopening of the case, reflects only that counsel filed an Amended Complaint.  To suggest that filing an Amended Complaint <u>ipso</u> <u>facto</u> creates subject matter jurisdiction under these circumstances is frivolous.

characteristics of a civil enforcement action: a preliminary investigation leading to a formal complaint by a state actor that seeks "to sanction the federal plaintiff . . . for some wrongful act."  Sprint Communications, 134 S. Ct. at 592; Amended Complaint at 12-13; 18-19; Opposition  at 25 (conceding the existence of a "civil enforcement proceeding").[3]

Further, the factors set forth in Middlesex County weigh in favor of abstention. First, the state proceeding is ongoing in Connecticut Superior Court, with counsel having made their appearances, and a motion for default judgment having been litigated and denied.  See City of Hartford v. Rozza, No. HHD-CV15-6058199-S.  Second, the interest of the state in enforcing its zoning laws is important, as reflected by the fact that violations of the zoning law are punishable as a crime.  Conn. Gen. Stat. § 8-12; see also World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d 1079, 1083 (9th Cir. 1987) ("[The municipality] had the option of proceeding either by civil or criminal enforcement of its municipal ordinance; the option of criminal enforcement demonstrates the importance of the underlying state interest.  Such an action, in aid of and closely related to [the municipality]'s zoning ordinance and akin to a criminal prosecution, clearly involves an important state interest." (citing Trainor, 431 U.S. at 449-50 (Blackmun, J., concurring)); see also id. at 1084 (Kennedy, J., concurring).

---

[3] The plaintiffs in their Opposition suggest that Younger should not apply to this civil enforcement proceeding because abstention "ignores the Supreme Court's teaching that 'it has never been suggested that Younger requires abstention in deference to a state judicial proceeding reviewing legislative or executive action.'"  Opposition at 25 (quoting New Orleans Public Service, Inc. (NOPSI) v. Council of the City of New Orleans, 491 U.S. 350, 368 (1989)) (emphasis added).  Nowhere in their Amended Complaint, in the City's Motion, nor in the plaintiffs' Opposition is it anywhere suggested that the pending civil enforcement proceeding involves review of legislative, i.e., action that "make[s] a rule for the future" (such as rate-setting), NOPSI, 491 U.S. at 372, or executive action, such as a decision to prosecute.  The claim at issue here is the constitutionality of already enacted legislation.  The language plaintiffs cite from NOPSI is entirely inapposite and ignores Sprint Communications' clear requirement for Younger abstention in light of a state civil enforcement action against a federal plaintiff.

Third, the constitutional claims raised in the Amended Complaint may be raised, and adequately litigated, as a defense to the enforcement action in the pending state proceeding.  See, e.g., Husti v. Zuckerman Property Enterprises, Ltd., 199 Conn. 575, 579 (1986) (First Amendment defense raised against a motion for an injunction to comply with zoning ordinance).

The plaintiffs raise two principal objections to Younger's applicability to this case. First, they contend that, because the City filed its civil enforcement action one day before the plaintiffs filed their first Complaint in federal court, Younger should not apply. Opposition at 25.  This argument ignores the long-standing rule that Younger applies even when the state actor files its state action after the federal plaintiff files her federal action, provided that no "proceedings of substance on the merits have taken place in federal court."  Hicks v. Miranda, 422 U.S. 332, 349 (1975); see also McGRX, 452 Fed. App'x at 75 (applying Hicks); Ruling at 9 n.1 (discussing Hicks's applicability to this case).  Not only does Younger apply in full force under the circumstances presented here, it would also have applied even if the City had chosen to file its enforcement action against the plaintiffs weeks, and perhaps months, after the plaintiffs had commenced the instant action provided that this court had not yet reached substantial proceedings concerning the merits of the plaintiffs' claims.  The plaintiffs' contention to the contrary is without merit.

Second, the plaintiffs argue that, because the City's enforcement action was filed against only the title-holders to the property (Laura and David Rozza), and not the remaining six federal plaintiffs, the state proceeding is not "a context in which the [ ] individual legal rights [of the other six federal plaintiffs] would be vindicated."  Opposition

at 26.  The court construes this as an argument that <u>Younger</u> abstention is inapplicable as to the six federal plaintiffs who are not parties to the state civil enforcement action because the instant proceeding would not interfere with the state proceeding insofar as the state proceeding does not directly affect six of the eight federal plaintiffs.  <u>See, e.g.</u>, <u>Doran v. Salem Inn, Inc.</u>, 422 U.S. 922, 931 (1975) (<u>Younger</u> did not apply to two corporations that had similar interest to corporation whose suit was barred by <u>Younger</u>).

The court does not agree.  Admittedly, as a general matter, distinct parties are treated separately under the <u>Younger</u> doctrine.  <u>See, e.g.</u>, <u>Steffel v. Thompson</u>, 415 U.S. 452, 471 n.19 (1974) ("The pending prosecution of [a third party prosecuted under the statute petitioner challenges] does not affect petitioner's action for declaratory relief."); <u>Doran</u>, 422 U.S. at 931.  However, the Second Circuit has squarely held that, where, as here, third party federal plaintiffs "may claim no greater [constitutional] protection than [the state defendant over whose case <u>Younger</u> abstention is proper], and their success on the merits is entirely derivative of whatever rights that [the state defendant] may have," <u>Younger</u> abstention over the third parties is proper.  <u>Spargo</u>, 351 F.3d at 83 (internal quotation marks and citation omitted); <u>cf.</u> <u>Doran</u>, 422 U.S. at 928-29 (declining to exercise <u>Younger</u> abstention over federal third parties' claims because they were "unrelated in terms of ownership, control, and management" to the party subject to pending state proceeding).  Here, the six federal plaintiffs who are not parties to the state civil enforcement action are closely related to the Rozzas, and their success on the merits of their federal claim "is entirely derivative of whatever rights" the Rozzas have.  <u>Spargo</u>, 351 F.3d at 83.

Specifically, the federal plaintiffs who are not parties to the state enforcement action cannot claim any greater constitutional protection than Laura and David Rozza, who are parties to the state enforcement action.  Chief among the relief sought by the plaintiffs is a permanent injunction against the City from "continuing" the pending civil enforcement action.  See Complaint at 24.  The six plaintiffs who are not subject to the pending civil enforcement action are intimately related to Laura and David Rozza "in terms of ownership, control, and management" of the property, Doran, 422 U.S. at 928-29; the rights they seek to vindicate in federal court are no different than the rights the Rozzas are capable of seeking to vindicate in the civil enforcement action; and the outcome of that case will affect them all equally.  Practically speaking, if the civil enforcement action against the Rozzas succeeds, the other six federal plaintiffs may no longer live in the property.  Thus, the court abstains from exercising jurisdiction over all the plaintiffs in this case.[4]

## IV.   CONCLUSION

For the reasons set forth above, the City's Motion to Dismiss (Doc. No. 42) is **GRANTED**.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 11th day of April, 2016.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

_____

[4] Younger recognized two exceptions to its applicability: first, that a challenged statute is "flagrantly and patently violative of express constitutional prohibition in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it;" and, second, that the statute at issue has been applied in "bad faith" or for purposes of "harassment," Younger, 53-54 (internal quotation marks and citation omitted)).  The plaintiffs do not argue, and the court does not find, that either exception applies to this case.